UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
Eastern DIVISION

Kyle Bader

RECEIVED
MAY 08 2018
BY MAIL

Case#
(To be assigned by the Clerk of the Court)

-V-

Plaintiff Requests Trial By Jury
☑ Yes ☐ NO

Gary Schaaf, Sheriff, Perry County, mo
Wayne Craft, Captain, Perry County Jail
Kara Evans, Sargeant, Perry County Jail
City of Perryville, mo
County of Perry, mo
Josh Upfink, Correctional Officer, Perry County Jail
Sara Owens, Correctional Officer, Perry County Jail
Kristin Nennger, Correctional Officer, Perry County Jail

CIVIL RIGHTS COMPLAINT

## I. The Parties to this Complaint

### A. The Plaintiff

Name: Kyle Bader

Other names you have used: N/A

Prisoner Registration Number: *

Current Institution: * Cape Girardeau County Jail, 216 North Missouri Street, Jackson, MO 63755

Indicate your prisoner status:

- [x] Pretrial detainee
- [ ] Civilly committed detainee
- [ ] Immigration detainee
- [ ] Convicted and sentenced state prisoner
- [ ] Convicted and sentenced federal prisoner
- [ ] Other (explain): ____________________

### B. The Defendant(s)

To the best of your knowledge, give the information below for each defendant named in the caption of this complaint. Make sure the defendant(s) named below are the same as those listed in the caption of this complaint. Attach additional pages if necessary.

For an individual defendant, include the person's job title, and check whether you are suing the individual in his or her individual capacity, official capacity, or both.

**Defendant 1**

Name: Gary Schaaf

Job or Title: Sheriff, Perry County, MO

Badge/Shield Number: ____________________

Employer: County of Perry, MO

Address: 710 South Kingshighway Street, Perryville, MO 63775

- [x] Individual Capacity
- [x] Official Capacity

(1)

**Defendant 2**

Name: Wayne Craft

Job or Title: Captain, Jail Adminastrater

Badge/Shield Number: ——

Employer: County of Perry, MO

Address: 710 South Kingshighway Street, Perryville, MO 63775

[✓] Individual Capacity [✓] Official Capacity

## II. Statement of Claim

Type, or neatly print, a short and plain statement of the **FACTS** that support your claim(s). For every defendant you have named in this complaint, you must state what he or she personally did to harm you. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Do not make legal arguments, or cite court cases or statutes. You may attach additional pages if necessary.

Your statement of claim must include all of the following information:

1. What happened to you?
2. When did it happen?
3. Where did it happen?
4. What injuries did you suffer?
5. What did each defendant personally do, or fail to do, to harm you?

I. Jurisdiction And Venue

1. This is a civil action, authorized by 42 USC 1983, to redress the deprivation of rights, secured by the US Constitution, laws, and treaties of the United States. This Court has jurisdiction pursuant to 28 USC 1331 and 1343 (a)(1)-(3). This Court is an appropriate venue under 28 USC 1391 (b)(1), because it is where the events giving rise to this cause of action occurred. Plaintiff seeks declaratory relief pursuant to 28 USC 2201 and 2202. Plaintiff seeks injunctive relief pursuant to 28 USC 2283, 2284, and Rule 65 of the Federal Rules of Civil Procedure. Plaintiff seeks damages for civil conspiracy under Missouri law and 42 USC 1983. Plaintiff seeks damages for breach of duty/negligence under Missouri State law. Plaintiff seeks damages for assault and battery under state law. Plaintiff seeks damages for Intentional Infliction of Emotional Distress under Missouri State law.

II. Parties

2. Plaintiff, Kyle Bader, is a state pretrial inmate currently detained at the Cape Girardeau County Jail. Address: 216 North Missouri Street, Jackson, MO 63755.

3. Defendant, Gary Schaaf, is the Sheriff of Perry County, MO. Address: 710 South Kingshighway Street, Perryville, MO 63775.

(2)

4. Defendant, Wayne Craft, is a Captain at the Perry County Jail. Address: 710 South Kingshighway, Perryville, MO 63775.

5. Defendant, Kara Evans, is a Sargeant at the Perry County Jail. Address: 710 South Kingshighway, Perryville, MO 63775.

6. Defendant, City of Perryville, MO, is located at 710 South Kingshighway, Perryville, MO 63775.

7. Defendant, County of Perry, MO, is located at 710 South Kingshighway, Perryville, MO 63775.

8. Defendant, Josh Upfink is a Correctional Officer at the Perry County Jail. Address: 710 South Kingshighway, Perryville, MO 63775.

9. Defendant, Sara Owens is a Correctional Officer at the Perry County Jail. Address: 710 South Kingshighway, Perryville, MO 63775.

10. Defendant, Kristin Nennger, is a Correctional Officer at the Perry County Jail. Address: 710 South Kingshighway Street, Perryville, MO 63775.

11. Defendant, Sabrina Winkler, is a Correctional Officer at the Perry County Jail. Address: 710 South Kingshighway Street, Perryville, MO 63775.

12. Defendant, Jeremiah Choka, is a Correctional Officer at the Perry County Jail. Address: 710 South Kingshighway Street, Perryville, MO 63775.

13. Defendant, Mayor of Perryville, MO, is the Mayor of Perryville, MO. Address: Perryville City Hall - Mayor's Office.

14. Defendant, Unknown Correctional Officers, are Correctional Officers at the Perry County Jail.



Address: 710 South Kingshighway Street, Perryville, MO 63775.

15. Defendants Unknown Captains are unknown named Captains at the Perry County Jail. Address: 710 South Kingshighway Street, Perryville, MO 63775.

16. Defendants Unknown Lieutenants are unknown named Lieutenants at the Perry County Jail. Address: 710 South Kingshighway Street, Perryville, MO 63775.

17. At all times mentioned herein, each defendant acted under the color of state law. Each defendant is being sued in his/her individual capacity for monetary relief, and in his/her official capacity for injunctive relief.

III. A. Statement of Claim

18. Plaintiff, Kyle Bader, is a pretrial inmate currently detained at the Cape Girardeau County Jail. The events at issue in this lawsuit concern plaintiff's confinement in the Perry County Jail from 2014-2018.

19. Sometime on or around July 24, 2014, I was placed in the Perry County Jail, in Perryville, MO, because of alleged disorderly conducting involving me drinking excessive alcohol. While I was being "booked" in, officers found marijuana on me. Ultimately, I was released after a 24 hour hold, and then rearrested on the marijuana charge, a day or so later.

III. B. The "Booking Process"

20. Like most county jails, Perry County Jail has a booking process that requires inmates to be stripped out (strip-searched) upon entering the jail, amongst other things. However, how the strip-searches are conducted, and how long an inmate must wait in the "drunk tank" before being

pulled out to be "booked" in, depends on who's working at that time. Oftentimes, pursuant to a long-standing "custom" of the jail, inmates are thrown into a "suicide" cell, that is laden with dirt, grime, a toilet that leaks urine and fecal contaminated water, and a terrible stench that permeates the room. As many as 15-20 inmates are crammed into the "drunk tank" at any given time. Once in the drunk tank, you are not given a mattress, no sheet, no pillow, no clothing, no cleaning supplies, and officers take hours, sometimes days, before bringing inmates toilet paper, forcing some inmates to defecate and/or urinate without being able to clean themselves afterward. No soap to wash your hands after using the toilet is provided to inmates in the drunk tank.

21. Sometimes officers will take several days before booking inmates in, and when inmates complain, officers taunt them. This is a long-standing custom of the jail, that upon information and belief, has been condoned by Sheriff Schaaf. Once an inmate is booked in, then the strip-search process is conducted. The strip-search process is extremely abusive. Officers tell inmates to stick out their tongues and flick them in and out, in a sexual manner. Inmates, male inmates, are told to grab our genitalia for several seconds and play with ourselves and we are told to lift our genitalia up and down in a sexual manner. After this, inmates are told to "bend over" and "spread our cheeks" and cough repeatedly. Male staff will often make lewd sexual comments while male inmates are bent over, and even resort to slapping inmates buttocks. Sheriff Schaaf has been aware of what's going on, because there have been many complaints of sexual harassment by inmates. The jail also does not provide mental health counseling, or screening, nor is there a suicide prevention policy at the jail.

22. Once an inmate is strip-searched he/she is given only one washcloth, usually dirty and that smells of mold, one towel that is usually dirty, and a dirty uniform (none of the clothing is washed with laundry detergent), and maybe a bar of soap is provided (depending on the mood of the booking officer), as well as a small toothbrush, toothpaste, and sometimes a comb. After this, you are sent to your assigned unit.

23. As I stated, I was rearrested on a marijuana charge, after being released on bond/24 hour hold, because the State of Missouri picked up the charge. I was brought into the jail in late July, early August

(5)

2014, and then thrown into the drunk tank, where I was left for several hours. The drunk tank also double functions as a "suicide cell" even though the room is not padded at all. The room/tank was laden with dirt all over the walls, the floor, toilet paper, papercups, and food strewn everywhere, and a terrible stench of fecal matter and urine from the defective toilet permeated the air. The booking officers purposely elevated the cold air in the tank, and refused to give any of us blankets, sheets, or mats. When I asked a booking officer why I couldn't have a sheet, blanket, or mat I was told I couldn't have one because "I'm a criminal." After some time, I was "booked" in, and then taken to be strip-searched.

24. During the strip-search, the officer who conducted it repeatedly abused me physically and verbally. I was told to stick out my tongue, lift up my genitalia and roll it around repeatedly, and then told to bend over. Once I bent over, I felt the officer's hands smack my buttocks and he started laughing. He also told me, while sexually assaulting me, to cough repeatedly. I felt violated, and told him to stop assaulting me, but he kept telling me to cough, because he wanted to see if I had "something in my butt," as he stated. Finally, after several minutes, he finished and gave me 1 set of dirty clothing, a jail uniform to put on, no socks, no boxers, a blanket, and a torn, deflated mattress, as well as a bar of soap, a toothbrush, and tooth paste, and told me to go to my unit, C-D pod, the "general population" pod.

25. III. C. Inmate Meals / Food

25. The jail contracts its food service out to Aramark Food Services, Inc, a private company that contracts with the jail to provide meals to the inmates. Aramark offers the jail the option of picking four qualities/grades of food to inmates: Grades A, B, C, and D, with Grade A being the best quality, and Grade D being the lowest quality food. The jail picked the grade C or D quality food, which is served to us at the jail. Breakfast is always a half bowl of dry cereal, with powder milk, which often comes hot, and spoiled. No fresh fruit is served in the mornings, nor pastry of any kind. The meals that are supposed to be hot meals are often brought to inmates cold, sometimes ice cold. For lunch, on Mondays, Thursdays, and Fridays, we are fed barely cooked, unseasoned raw

pasta noodles, applesauce, uncooked vegetables, a half brownie. On Tuesday for lunch we are fed chips with beans on them, no fruit, cake, or juice. Every Wednesday and Saturday for lunch, we are fed two hotdogs, with 2 slices of bread. Sundays for lunch we are given "leftovers" from the previous day's lunches. Every day for dinner, we are given a slice of bologna so thin, that you can see through it, and cheese that is the same, a handful of chips, and two oreo cookies. The entire times I was at the jail, from 2014-2016, and then 2017-2018, I practically starved every day. I've lost over 60 pounds of body fat, due to the fact that we ate less than 800 calories per day. Not only that, the food is served on trays that are filled/covered in dirt and grime, and the food often contains insects, and on occasions, I've found thumbtacks in my food. Even the officers who serve the food advise the inmates to check our food before we eat it. Any inmate that complains about the food is locked down in his cell and put on "punishment." Defendant Schaaf is aware of the problems with the food and upon information and belief has endorsed a policy of serving inmates inadequate meals, on dirty food trays. Defendants Craft, Evans, Upfink, Owens, Nennger, Winkler, Choka, Unknown Correctional Officers, Unknown Captains, Unknown Lieutenants, all enforced this policy, and served me and other inmates nutritionally inadequate meals the entire time I was at the jail.

III. D. No Laundry Service

26. The jail, pursuant to a long-standing custom of defendant Schaaf, does not wash any of the clothing with laundry detergent, or bleach. In fact, in the rare instance laundry is even done, it is washed with cold water only. Other than that, there is no laundry, and most inmates wear the same uniform for months at a time. All of the washcloths have a musty, fungal smell and stain to them, and the same goes for the towels. The individual defendants all enforced this custom at the jail, against plaintiff and other inmates. From 2014-2018, I was forced to wear the same set of clothing in jail. When I complained to Winkler, Craft, Evans, Upfink, Owens, Nennger, Choka, and the other Unknown Officers, lieutenants, and Captains, I was told to quit complaining.

III. E. No Cleaning Supplies

27. The jail, pursuant to a long-standing custom of defendant Schaaf, the City of Perryville, MO, and the County of Perry, MO, rarely provides cleaning supplies to inmates. Inmates are forced to use products purchased from the overpriced commissary to attempt to clean the pod. Not only that, there is black mold growing in all of the inmate cells and showers, and despite our repeated requests, defendants Winkler, Schaaf, Craft, Evans, Nennger, Owens, Choka, Upfink, and all of the other Unknown Correctional Officers, Lieutenants, and Captains denied me and the inmates cleaning supplies, on numerous occasions, during my time at the jail.

III. F- No Clean Drinking Water

28. The jail does not provide inmates any clean drinking water. To be more specific, the water in the sinks is contaminated with bacteria, and excessive amounts of lead. Numerous inmates, including myself, have gotten sick from drinking the contaminated water. Sheriff Schaaf is aware of whats going on, as well as the Mayor of Perryville, MO, who operates as the defacto Jail Administrator. Not only that, Craft, and the other unknown named captains and lieutenants and officers, as well as Winkler, Evans, Upfink, Owens, Nennger, Choka, all endorsed this custom of providing contaminated water to inmates, at Schaaf's direction. I requested bottled water on numerous occasions, but was denied.

(29)

III. G - No Outside Recreation

(29) The jail, at the direction of defendant Schaaf, does not give inmates any form of outside recreation at all, and because the pods are so small, we are unable to move around. As a result, I and other inmates, frequently experience muscle cramps. From 2014-2018, I was not given any recreation at the jail whatsoever, even though I requested it from Craft, Evans, Nennger, Winkler, Owens, Choka, UpFink on several occasions. These defendants individually denied me recreation the entire times I was housed at the jail.

III. H - Denial of Hygiene

30. The jail has a custom of denying inmates hygiene items, such as lotion, shampoo, soap, toothpaste, toothbrushes, floss, combs, brushes, and deodorant. Once inmates are given their initial bar of soap at booking, a toothbrush, and a toothpaste, it takes weeks for staff to pass out anymore soap, and no toothpaste, toothbrushes, combs, deodorant, brushes, floss, or any other hygiene is passed out. Inmates usually have to sell their trays to inmates who can afford to purchase commissary and get hygiene items that way. While I was there, I was forced to sell my already nutritionally inadequate food trays for hygiene. Me and other inmates complained to Craft, Schaaf, Evans, Nenniger, Winkler, Upfink, Owens, Choka, and the other captains, lieutenants and officers. These officers, on the same and separate occasions, denied me hygiene items, preventing me from showering, brushing my teeth, washing my hands, etc. In addition, toilet paper is rarely passed out, and when it is, it's limited to 1 roll per week, per inmate, and sometimes, we only get 2 rolls every 14 days. Inmates such as myself were forced to use our towels and dirty, moldy washcloths to wipe our butts. While I was at the jail, on numerous occasions when (1) I didn't have toilet paper because I ran out, and (2) staff didn't pass out toilet paper, I requested that the individual defendants provide me with toilet. They all, sometimes on joint occasions and times, and different occasions and times, denied me toilet paper, and on one occasion, Craft told me to "use my hand" to wipe myself.

III. I – Vermin Infestation

31. The jail has a custom of allowing spiders, such as brown recluse spiders, rats, roaches, gnats, and other insects, to infest the inmate pods. Since 2014, up until now, the pods have been infested with rats, roaches, gnats, and other insects and vermin. Sheriff Schaaf is aware of the infestation, but has taken no remedial action. Not only that, Schaaf enforces this unconstitutional custom through defendants Craft, Evans, Upfink, Owens, Nenniger, Winkler, Choka, and the rest of the officers, lieutenants, and captains. When I, and the rest of the inmates asked the defendants to have professionals come in and spray for vermin, they told me and the other inmates to file a grievance, even though there is no grievance system. This occurred from 2014-2018. There is still vermin throughout the jail and all of the pods.

III. J - Medical Care - No Medical Care, No Hunger Strike Policy, No Suicide Prevention Policy, Mental Health Screening

32. The jail contracts out its medical service to Advanced Correctional Healthcare, Inc. Advanced Correctional Healthcare would be responsible for providing inmates medical care, upon entry into the jail, as well as having a policy for the prevention of suicide, and ensuring that the jail has qualified mental health personnel on staff to provide mental health treatment to inmates. However, upon entry into jail, inmates are not asked if they are suicidal, have a history of suicide attempts, nor does the jail have any psychologists, counselors, or psychiatrists on staff to provide mental health treatment. In addition, the jail does NOT have a sick-call program. If medical is needed, it takes 30 days or more to receive any sort of care, regardless of the emergency. I'm aware of inmates who have died, because they couldn't medical care, or mental health treatment. When I first came to the jail, I told the jailers that I wanted to see a psychologist, because I had been in the military, and I believe I had post-traumatic stress disorder. The booking officers all laughed at me and told me to "stop whining". Later attempts to get medical care for a failed suicide attempt, proved futile. In 2018, I attempted to take my own life, by trying to hang myself, in my cell, while I was on lockdown, which will be described later. I attempted to do this on several occasions, because the conditions in the jail were so abysmal. There are no emergency "call" buttons in the pods so I could not call for help. I remember tying a sheet around my neck, and jumping off of something, and everything went black after that. When I woke up, I was lying on the floor, my neck was grotesquely swollen, and bruised, and I was coughing up blood. Defendants Winkler, Craft, Evans, Upfink, Owens, Nenniger, and Choku, did nothing to stop me from attempting to commit suicide, despite being aware that I was a suicide risk inmate, and despite becoming aware that I had attempted to kill myself. I had made numerous attempts to take my own life from 2014-2018, while at the jail. Sheriff Schaffen endorses a long-standing custom of not having a suicide prevention policy at the jail. I had even went on several hunger strikes that resulted in me becoming unconscious. However, once again none of the defendants bothered to report my hunger strikes, did not notify Medical, or the Captains, nor Sheriff, as part of a long-standing custom of the Sheriff. Advanced Correctional Healthcare, Inc, has not bothered to create a hunger strike policy, suicide



prevention policy, nor a policy for providing mental health counseling to inmates. More recently, an inmate named Ryan Fadler, who had a history of suicide attempts committed suicide at the jail, even after the defendants all became aware that he was a suicide risk inmate.

III K – Excessive Force Policy

(33) The jail also has a long-standing custom of allowing its officers to use not only unnecessary force against inmates to subdue them, whatever the reason for wanting to subdue/restrain inmates, but also using excessive force against inmates. Like all of the other "customs" of the jail, this one is endorsed and condoned by Schaaf, and carried out by all of the officers, lieutenants, Sergeants, and Captains at the jail. To be more specific, on or around February 15, 2018, I was brought back into the jail for allegedly damaging property. The jail staff severely punish inmates if inmates are walking around while staff are in the pod. Inmates are usually placed on lockdown for 5, 10, or 15 days. I was placed on lockdown for 5 days, because I was allegedly walking around in the pod, while an officer was present. While on lockdown, you aren't allowed to order commissary, or have any commissary in your cell. Around February 17, 2018, I began banging on my door, yelling for medical attention. At that time I was hallucinating, having panic attacks, and I began having thoughts of committing suicide. Somewhere, I heard a voice telling me to "stop" but I couldn't understand where it was coming from, or who was the speaker. I continued to bang on the door, and defendant Winkler came to the door, and tried opening the door. When she couldn't, she called for backup. Two road deputies came in, opened my door, slammed me to the ground, and began punching me and kicking me in my face, chest, and neck, even though I was not banging on the door, and not resisting. They then, including Winkler, zapped me with a taser, handcuffed me, and took me up front near the booking area, and placed me in a restraint chair. I stayed in the restraint chair all night, and until the next morning, and then I was placed back on lockdown in the pod.

(34) On or around 3/20/2018, while I was on lockdown in the pod, Choka and Evans came to my door with a "shock shield" and told me to step back against the wall. I asked them what was going on and they kicked down the door, came in with their shock shields, bumrushed me, which caused electricity to flow throughout my body, which caused me to urinate and defecate on myself. They dragged me up front, put me in the "suicide cell" which is the drunk tank. When Craft arrived, he placed me back on lockdown. Defendant Kara Evans, pursuant to an agreement that Perry County, MO has with Cape Girardeau County, MO, had me shipped down to Cape Girardeau County, MO.

IV. Legal Claims

35. Plaintiff brings a "Monell" claim against City of Perryville, MO, County of ~~[illegible]~~ Perry MO, and defendant Schaff for having a "custom" of denying inmates hygiene, clothing, clean living conditions, adequate and nutritious food, outdoor exercise, cleaning supplies, and clean drinking water, and an environment free of vermin, as plaintiff stated in the complaint. Plaintiff realleges and reincorporates by reference paragraphs 18-34. A plaintiff raising a municipal liability claim under 42 USC 1983 must demonstrate that the alleged federal violation occurred because of a municipal policy or custom. Monell v. Dep't of Social Services of the City of New York, 436 U.S. 658, 694, 98 S. Ct. 2018, 56 L.Ed.2d 611 (1978). Defendants knowingly violated plaintiff's rights under the Fourteenth Amendment's Due Process Clause, as a pretrial detainee, pursuant to a custom of the City of Perryville, MO, County of Perry, MO, carried out by defendant Schaff. Plaintiff seeks damages on this claim.

36. Plaintiff brings a "Monell" claim against City of Perryville, MO, and County of Perry, MO, for having an unconstitutional policy and custom of denying inmates medical care, for not having a sick call policy, as plaintiff stated in the complaint. This claim is also brought against Advanced Correctional Healthcare, Inc., which enforced this unconstitutional policy/custom of not having a sick call policy, and not providing medical care to inmates at the jail, as plaintiff stated in the complaint. Plaintiff realleges and reincorporates by reference paragraphs



18-36.

37. Plaintiff contends that defendant County of Perry, MO, City of Perryville, MO and defendant Schaff, and Advanced Correctional Healthcare, Inc., showed deliberate-indifference to plaintiff's serious medical needs, by having a policy of providing inadequate suicide prevention (and having a policy of having no suicide prevention policy) training to employees, failing to supervise employees on how to handle suicide risk inmates, failing to fully "vet" employees during the hiring process. Perry County, MO and defendant Schaff, in his official capacity as Sheriff, espoused a policy of deliberate indifference towards inmates who are suicide risks, including the plaintiff, by failing to provide training and supervision of employees to handle suicide risk inmates, and allowing an unwritten policy of employees mishandling suicide risk inmates, all in violation of the Fourteenth Amendment's Due Process Clause. Plaintiff realleges and reincorporates by reference paragraphs 18-36.

38. The individual defendants, including the unknown officers, captains and lieutenants, were deliberately indifferent to plaintiff's serious medical needs, and failed to protect the plaintiff from committing/attempting to commit suicide, all in violation of the Fourteenth Amendment's Due Process Clause. Plaintiff realleges and reincorporates by reference paragraphs 18-36.

39. Plaintiff contends that defendants Mayor of Perryville, MO, City of Perryville, MO, County of Perry, MO and Advanced Correctional Healthcare, Inc., showed deliberate indifference to plaintiff's serious medical needs, by having a policy of providing inadequate supervision of "hunger-strike" inmates, including failing to have a program in place to report inmates who are on hunger strike to the proper medical and correctional official(s), failing to have an effective program (if any at all) in place to handle hunger-strike inmates and failing to supervise employees (and train them) on how to handle hunger-strike inmates, all in violation of the

Fourteenth Amendment's Due Process Clause. County of Perry, MO, and Sheriff Schaff in his official capacity as Sheriff, espoused a policy of deliberate indifference towards hunger-strike inmates, including plaintiff, by failing to provide training and supervision of employees to handle hunger strike inmates, and allowing an unwritten policy of employees mishandling hunger-strike inmates, all in violation of the Fourteenth Amendment's Due Process Clause.

40. Plaintiff contends that the individual defendants were all deliberately indifferent to the plaintiff's serious medical needs, when they allowed plaintiff to become unconscious during numerous hunger strikes from 2014-2018, and failed to monitor plaintiff while plaintiff was on hunger-strike, all in violation of the Fourteenth Amendment's Due Process Clause.

41. Plaintiff contends that Advanced Correctional Healthcare, Inc., City of Perryville, MO, Mayor of Perryville, MO, County of Perry, MO, showed deliberate indifference to plaintiff's serious medical needs by having a policy of providing no mental health screenings to inmates and no psychological and/or psychiatric care to inmates, especially inmates, like plaintiff, who suffer from mental disorders, and failing to provide training and supervision to employees on how to handle inmates with mental disorders, all in violation of the Fourteenth Amendment's Due Process Clause.

42. County of Perry, MO, and Sheriff Schaff, in his official capacity as Sheriff, espoused a policy of deliberate indifference towards inmates with mental disorders, including the plaintiff, by failing to provide training and supervision of employees to handle inmates with mental disorders, and allowing an unwritten policy of employee mishandling of inmates with mental disorders, all in violation of the Fourteenth Amendment's Due Process Clause.

43. Plaintiff contends that the individual defendants were deliberately indifferent to



plaintiff's needs, when they failed, and refused, to provide plaintiff with adequate and nutritious food, clothing, hygiene, cleaning supplies, a sanitary environment, clean drinking water, and medical care all in violation of the Fourteenth Amendment's Due Process Clause, as plaintiff stated in the complaint. This claim is also brought against the Unknown Food Service Supervisor.

44. Plaintiff contends that City of Perryville MO, County of Perry, MO and Sheriff Schaaf in his official capacity as Sheriff, espoused a policy of allowing officers to sexually assault and abuse inmates during the strip-search process, including plaintiff, by failing to provide training and supervision of employees on how to properly conduct strip-searches, and allowing an unwritten policy of employees mishandling and sexually assaulting inmates during strip-searches, all in violation of the Fourteenth Amendment.

45. Plaintiff contends that the unknown named officers who booked plaintiff in from 2014-2018, all violated plaintiff's rights under the Fourteenth Amendment's Due Process Clause when they repeatedly sexually assaulted plaintiff during the strip search process, as stated in the complaint.

46. Plaintiff contends that Aramark Food Services, Inc, showed deliberate indifference to plaintiff's health, by having a policy of providing inadequate and non-nutritious meals to inmates at the Perry County Jail, as stated in the complaint, in violation of the Fourteenth Amendment's Due Process Clause.

47. Plaintiff contends that County of Perry, MO, City of Perryville MO, violated the Fourteenth Amendment's Due Process Clause, by having a policy of allowing correctional officers, captains and lieutenants to use both unnecessary and excessive force against inmates, failing to provide use of force training to employees, and fully vetting candidates during the hiring process to see if they have a history of using excessive force. Perry County, MO and Sheriff Schaaf in his official capacity as Sheriff, espoused a policy of allowing officers to use unnecessary and excessive force against inmates, including plaintiff, and failing to provide use of

force training, and supervision of employees who use force against inmates, and allowing an unwritten policy of employees using excessive and unnecessary force against inmates all in violation of the Fourteenth Amendment's Due Process Clause.

48. Plaintiff contends that defendants Winkler, and the other 2 unknown officers, all violated plaintiff's right to be free from excessive force under the Due Process Clause of the Fourteenth Amendment, when they assaulted plaintiff, without justification, on or around February 17, 2018, as stated in the complaint. Plaintiff brings a state law claim for assault and battery against these defendants.

49. Plaintiff contends that defendants Choka and Owens violated plaintiff's right to be free from unnecessary and excessive force, when they assaulted plaintiff with shock shields on or around 3/20/2018, causing plaintiff to urinate and defecate on himself. Plaintiff brings a claim of assault and battery against these same defendants. When defendants denied plaintiff medical care after the assault, this was also a violation of the Fourteenth Amendment.

50. Plaintiff brings a civil conspiracy claim against the defendants under Missouri law and 42 USC 1983, for conspiring to:

- Deprive plaintiff of adequate and nutritious food, hygiene, clothing, outdoor exercise, clean drinking water, clean living conditions, a vermin free environment and medical care (this conspiracy claim is brought against all of the individual defendants)
- Deprive plaintiff of access to mental health care (all of the individual defendants)
- Deprive plaintiff of medical care after plaintiff attempted to commit suicide (all of the individual defendants)
- Deprive plaintiff of medical treatment during plaintiff's hunger strikes (all of the individual defendants)
- assault plaintiff, for no reason (Winkler and 2 unknown officers) (February 17, 2018)
- assault plaintiff for no reason (Choka, Owens) and depriving plaintiff of medical care after the assault (3/20/2018)

51. Plaintiff contends that defendants (City of Perryville, MO, County of Perry, MO, Sheriff Schaaf, Advanced Correctional Health Services, Inc., and all of the individually

Named defendants committed the tort of breach of duty by failing to:

- Provide plaintiff and other inmates with adequate and nutritious food, outdoor exercise, medical care, mental health care, clothing, hygiene, clean drinking water, cleaning supplies, a vermin free environment
- Provide plaintiff with medical care after plaintiff had been assaulted by Choka, Owens, Winkler, and Zuniewan officers.

52. Plaintiff contends that defendants, all of them, by their actions and their inactions, intentionally inflicted emotional distress upon plaintiff, and plaintiff seeks damages against all of the defendants.

## V. Requested Relief

53. Wherefore, plaintiff respectfully requests this court to GRANT him the following relief to which he may be entitled:

(A) A declaration that the acts/omissions of the defendants violated the US Constitution, laws, and treaties of the United States;

(B) A preliminary injunction ENJOINING defendants from enforcing all of the unconstitutional policies/customs mentioned in this complaint, and requiring that the defendants serve, inter alia, adequate and nutritious food;

(C) Nominal damages - $100.00;

(D) Compensatory damages - $ 4,500,000.00;

(E) Punitive damages - $2,500,000.00;

(F) Damages on the state law claims - $1,000,000.00;

(G) A jury trial on all issues triable by a jury;

(H) All other appropriate equitable and monetary relief.

/s/

dated:

(17)

# Additional Defendants

(1) Aramark Food Services, Inc.
Address: 710 South Kingshighway
Perryville, MO 63775

(2) Unknown Food Service Supervisor
Address: 710 South Kingshighway
Perryville, MO 63775

(3) Advanced Correctional Healthcare, Inc.
Address: 710 South Kingshighway
Perryville, MO 63775



## III. Injuries



If you sustained injuries related to the events alleged above, describe your injuries and state what medical treatment, if any, you required and did or did not receive.



## IV. Relief

State briefly and precisely what you want the Court to do for you. Do not make legal arguments. Do not cite any cases or statutes. If you are requesting money damages, include the amounts of any actual damages and/or punitive damages you are claiming. Explain why you believe you are entitled to recover those damages.

(See Complaint)

## V. Exhaustion of Administrative Remedies/Administrative Procedures

The Prison Litigation Reform Act ("PLRA") 42 U.S.C. § 1997e(a), requires that "[n]o action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted."

Administrative remedies are also known as grievance procedures. Your case may be dismissed if you have not exhausted your administrative remedies.

A. Did your claim(s) arise while you were confined in a jail, prison, or other correctional facility?

☑ Yes ☐ No

If yes, name the jail, prison or other correctional facility where you were confined at the time of the events giving rise to your claim(s):

Perry County Jail - Perryville, MO

B. Does the jail, prison or other correctional facility where your claim(s) arose have a grievance procedure?

☑ Yes ☐ No ☐ Do not know

C. If yes, does the grievance procedure at the jail, prison or other correctional facility where your claim(s) arose cover some or all of your claims?

☑ Yes ☐ No ☐ Do not know

If yes, which claim(s)?

All of them

D. Did you file a grievance in the jail, prison, or other correctional facility where your claim(s) arose concerning the facts relating to this complaint?

☐ Yes ☑ No

If no, did you file a grievance about the events described in this complaint at any other jail, prison, or other correctional facility?

☐ Yes ☑ No

E. If you did file a grievance:

1. Where did you file the grievance?

2. What did you claim in your grievance? (*Attach a copy of your grievance, if available*)

3. What was the result, if any? (*Attach a copy of any written response to your grievance, if available*)

4. What steps, if any, did you take to appeal that decision? Is the grievance process completed? If not, explain why not. (*Describe all efforts to appeal to the highest level of the grievance process.*)

F. If you did not file a grievance:

1. If there are any reasons why you did not file a grievance, state them here:

The defendants prevented me from filing any grievances they refused to give me complaint forms

2. If you did not file a grievance but you did inform officials of your claim, state who you informed, when and how, and their response, if any:

I informed all of the defendants, from 2014 - 2018, that what they were doing was wrong.

G. Please set forth any additional information that is relevant to the exhaustion of your administrative remedies.

N/A

(*Note: You may attach as exhibits to this complaint any documents related to the exhaustion of your administrative remedies.*)

## VI. Previous Lawsuits

The "three strikes rule" bars a prisoner from bringing a civil action or an appeal in federal court without paying the filing fee if that prisoner has "on three or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury." 28 U.S.C. § 1915(g).



A. To the best of your knowledge, have you ever had a case dismissed on the basis of this "three strikes rule"?

☐ Yes ☑ No

If yes, state which court dismissed your case and when it was dismissed. Attach a copy of the court's order, if possible.

Have you filed other lawsuits in state or federal court dealing with the same facts involved in this action?

☐ Yes ☑ No



B. If your answer to A is yes, describe each lawsuit by answering questions 1 through 7 below. (*If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.*)

1. Parties to the previous lawsuit

Plaintiff ____________________

Defendant(s) ____________________

2. Court (*if federal court, name the district; if state court, name the state and county*)

3. Docket or case number ____________________

4. Name of Judge assigned to your case ____________________

5. Approximate date of filing lawsuit ____________________

6. Is the case still pending?

☐ Yes

☐ No (*If no, give the approximate date of disposition*): ____________

7. What was the result of the case? (For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)

C. Have you filed other lawsuits in state or federal court otherwise relating to the conditions of your imprisonment?

☐ Yes ☐ No

D. If your answer to C is yes, describe each lawsuit by answering questions 1 through 7 below. (If there is more than one lawsuit, describe the additional lawsuits on another page, using the same format.)

1. Parties to the previous lawsuit

Plaintiff ____________________

Defendant(s) ____________________

2. Court (*if federal court, name the district; if state court, name the state and county*)

3. Docket or case number ____________________

4. Name of Judge assigned to your case ____________________

5. Approximate date of filing lawsuit ____________________



6. Is the case still pending?

☐ Yes

☐ No (*If no, give the approximate date of disposition*):____________

7. What was the result of the case? (For example: Was the case dismissed? Was judgment entered in your favor? Was the case appealed?)

## VII. Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

I declare under penalty of perjury that the foregoing is true and correct.

Signed this 6 day of May, 2018 XX

Signature of Plaintiff [signature] XX