UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
SOUTHEASTERN DIVISION

| | |
|---|---|
| KYLE BADER, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 1:18-CV-109-JAR |
| ) | |
| GARY SCHAAF, et al., ) | |
| ) | |
| Defendants. ) | |

## MEMORANDUM AND ORDER

This matter is before the Court on the motion of pro se plaintiff Kyle Bader, an inmate at the Cape Girardeau County Jail, for leave to commence this action without payment of the required filing fee.[1] Having reviewed the motion, the Court has determined that plaintiff lacks sufficient funds to pay the entire filing fee, and will waive the initial partial filing fee at this time. *See* 28 U.S.C. § 1915(b)(4). Additionally, for the reasons discussed below, the Court will direct the Clerk of Court to issue process upon defendants Wayne Craft, Kara Evans, Josh Upfink, Sara Owens, Kristin Nennger, Sabrina Winkler, Jeremiah Choka, Perry County, Aramark Food Services, Inc., and Advanced Correctional Healthcare, Inc.

### 28 U.S.C. § 1915(b)(1)

Pursuant to 28 U.S.C. § 1915(b)(1), a prisoner bringing a civil action in forma pauperis is required to pay the full amount of the filing fee. If the prisoner has insufficient funds in his or her prison account to pay the entire fee, the Court must assess and, when funds exist, collect an initial partial filing fee of 20 percent of the greater of (1) the average monthly deposits in the prisoner's account, or (2) the average monthly balance in the prisoner's account for the prior six-

---

[1] Plaintiff's allegations arise out of his incarceration at the Perry County Jail. In a Notice of Change of Address, plaintiff states he is "currently being bounced back and forth between the Cape Girardeau County Jail and the Perry County Jail," but he wanted all his mail sent to the Perry County Jail.

month period. After payment of the initial partial filing fee, the prisoner is required to make monthly payments of 20 percent of the preceding month's income credited to the prisoner's account. 28 U.S.C. § 1915(b)(2). The agency having custody of the prisoner will forward these monthly payments to the Clerk of Court each time the amount in the prisoner's account exceeds $10, until the filing fee is fully paid. *Id.*

Plaintiff has submitted a motion and affidavit to proceed in district court without prepaying fees or costs. Although the form states that an inmate must submit a certified prison account statement, plaintiff has not done so. In his affidavit, however, he states that he has no job, no income, no assets, and no money in his prison account. Taking this into consideration, the Court will not assess an initial partial filing fee at this time. *See* 28 U.S.C. § 1915(b)(4) ("In no event shall a prisoner be prohibited from bringing a civil action . . . for the reason that the prisoner has no assets and no means by which to pay the initial partial filing fee.").

## Legal Standard on Initial Review

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the Court may dismiss a complaint filed in forma pauperis if the action is frivolous, malicious, or fails to state a claim upon which relief can be granted. To state a claim under 42 U.S.C. § 1983, a plaintiff must demonstrate a plausible claim for relief, which is more than a "mere possibility of misconduct." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678. Determining whether a complaint states a plausible claim for relief is a context-specific task that requires the reviewing court to draw upon judicial experience and common sense. *Id.* at 679. The court must "accept as true the facts alleged, but not legal conclusions or threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." *Barton v. Tabor*, 820 F.3d 958, 964 (8th Cir. 2016).

When reviewing a pro se complaint under § 1915(e)(2), the Court must give it the benefit of a liberal construction. *Haines v. Kerner*, 404 U.S. 519, 520 (1972). A "liberal construction" means that if the essence of an allegation is discernible, the district court should construe the plaintiff's complaint in a way that permits his or her claim to be considered within the proper legal framework. *Solomon v. Petray*, 795 F.3d 777, 787 (8th Cir. 2015). However, even pro se complaints are required to allege facts which, if true, state a claim for relief as a matter of law. *Martin v. Aubuchon*, 623 F.2d 1282, 1286 (8th Cir. 1980). *See also Stone v. Harry*, 364 F.3d 912, 914-15 (8th Cir. 2004) (stating that federal courts are not required to "assume facts that are not alleged, just because an additional factual allegation would have formed a stronger complaint").

## The Complaint

Plaintiff brings this action pursuant to 42 U.S.C. § 1983 against the following officials working at the Perry County Jail: Wayne Craft, Captain; Kara Evans, Sergeant; Josh Upfink, Correctional Officer ("CO"); Sara Owens, CO; Kristin Nennger, CO; Sabrina Winkler, CO; Jeremiah Choka, CO; Unknown COs; Unknown Captains; and Unknown Lieutenants. Plaintiff also names as defendants Gary Schaaf, Sheriff of Perry County; the City of Perryville; the County of Perry; and the Mayor of Perryville. Finally, he names as defendants Aramark Food Services, Inc., which he alleges contracts with Perry County to provide food service to the jail; Unknown Food Service Supervisor; and Advanced Correctional Healthcare, Inc., which he alleges contracts with Perry County to provide medical care to the jail.

Plaintiff alleges he has been confined at the Perry County Jail since 2014.[2] His twenty-six page complaint details various conditions at the Perry County Jail that he alleges violate his constitutional rights.

Plaintiff states the Perry County Jail contracts with Aramark Food Services, Inc. to provide meals to the inmates. He states that the inmates are provided C or D quality food. He alleges he has lost sixty pounds since his confinement because the inmates are given only 800 calories per day and are "practically starved." For example, plaintiff states that every day for dinner, inmates are given "a slice of bologna so thin that you can see through it, and cheese that is the same, a handful of chips, and two Oreo cookies."

Plaintiff alleges laundry is done without any detergent, and using only cold water. The inmates are given no cleaning supplies, and there is black mold in the prison. He states there is no clean drinking water in the jail, and the sink water is contaminated with bacteria and lead. He alleges he has become ill from the water, and the inmates have no access to bottled water.

Plaintiff states the inmates are offered no recreation time, and the cells are so crowded that he cannot move around. He states he has had no recreation time in the four years he has been housed at the jail, and that he suffers muscle cramps as a result.

Plaintiff complains that the inmates are given only one roll of toilet paper per week, and are denied hygiene items. He states the jail is infested with vermin.

As to medical care, plaintiff states the Perry County Jail contracts out its medical care to Advanced Correctional Healthcare, Inc. The jail has no psychiatrist on staff and no sick call program. He states inmates have to wait thirty days to receive medical care. Plaintiff states he has gone on hunger strikes, and the jail has no hunger strike policy. He has become unconscious on his hunger strikes.

---

[2] Later in the complaint, plaintiff states he has been confined at the Perry County Jail from 2014 to 2016, and then again from 2017 to 2018.

- 4 -

Plaintiff states that he arrived at the Perry County Jail with post traumatic stress disorder ("PTSD") from his service in the military, and told staff that he would need to see a psychologist. He states the booking officers laughed and told him to stop whining. Plaintiff states that in 2018, he attempted suicide at the Perry County Jail, and that he "attempted to do this on several occasions, because the conditions in the jail were so abysmal." Plaintiff states that the jail has no emergency call buttons, so he could not call for help. After he attempted to hang himself, he woke up lying on the floor with a swollen and bruised neck, coughing up blood. Plaintiff states "defendants Winkler, Craft, Evans, Upfink, Owens, Nennger, and Choka did nothing to stop me from attempting to commit suicide, despite being aware that I was a suicide risk inmate, and despite becoming aware that I had attempted to kill myself. I had made numerous attempts to take my own life from 2014 to 2018." Plaintiff states the jail has no suicide prevention policy and no mental health counseling.

Plaintiff also alleges he was subject to excessive force while at Perry County Jail. He states that on February 15, 2018, he was brought to the jail for damaging property. On February 17, 2018, he began banging on his cell door and calling for medical attention. He states that he was hallucinating, having panic attacks, and hearing voices. Plaintiff states that defendant Winkler came to plaintiff's door, and called for backup.

> Two road deputies came in, opened my door, slammed me to the ground, and began punching me and kicking me in my face, chest, and neck, even though I was not banging on the door and not resisting. Then they, including Winkler, zapped me with a taser, handcuffed me, and took me up front near the booking area, and placed me in a restraint chair. I stayed in the restraint chair all night, and until the next morning, and then I was placed back on lock down in the pod.

Plaintiff states that on March 20, 2018, he was on lock down in his pod when defendants Choka and Evans

> came to [his] door with a "shock shield" and told [him] to step back against the wall. I asked them what was going on and they kicked down the door, came in with their shock shields, bum rushed me, which caused electricity to flow

throughout my body, which caused me to urinate and defecate on myself. They dragged me up front and put me in the "suicide cell," which is the drunk tank. When Craft arrived he placed me back on lockdown. Defendant Kara Evans, pursuant to an agreement that Perry County, MO has with Cape Girardeau County, MO, had me shipped down to Cape Girardeau County, MO.

For damages, plaintiff seeks more than $8 million and an injunction to prevent defendants from enforcing its unconstitutional customs and policies at the Perry County Jail.

**Discussion**

Plaintiff's complaint details numerous alleged constitutional violations against more than seventeen defendants occurring over a four-year period of incarceration at the Perry County Jail. On initial review under § 1915(e), the Court will first discuss plaintiff's plausible claims for relief. Then, the Court will discuss which defendants may possibly be held liable for these alleged violations under § 1983.

(A) Plausible Claims for Relief

Plaintiff has stated a plausible constitutional violation regarding his prison diet. He alleges he was served only 800 calories per day, and that as a result he lost sixty pounds. At this stage of the litigation, these allegations are sufficient to state an Eighth Amendment claim. *See Wishon v. Gammon*, 978 F.2d 446, 449 (8th Cir. 1992) (prisoners have a right to nutritionally adequate food). Plaintiff alleges defendants Craft, Evans, Upfink, Owens, Nennger, Winkler, and Choka were aware that plaintiff was receiving inadequate nutrition, and the Court will order the Clerk to issue process on these defendants. Contracted food service providers, like Aramark Food Services, Inc. also can be held liable under § 1983 as a state actor because the food service provider has assumed the state's constitutional obligation to provide a nutritionally adequate diet to inmates. *See, e.g., Wilmoth v. Aramark Com Serv., LLC*, 2012 WL 4472145 (W.D. Ark. Sept. 27, 2012) (holding that plaintiff's allegations of rapid weight loss caused by inadequate meal

provisions survived motion on summary judgment). The Court will order service to issue on defendant Aramark Food Services, Inc. as well.

The Court also finds plaintiff has stated a plausible constitutional violation regarding the jail's lack of recreation time. He states that in his four years at the Perry County Jail, he was never allowed recreation time or time out of his crowded cell. He states he has suffered muscle cramps as a result. "[L]ack of exercise may be a constitutional violation if one's muscles are allowed to atrophy or if an inmate's health is threatened." *Wishon*, 978 F.2d at 449. Liberally construed, the Court finds that plaintiff's claim that he was denied recreation during his four-year confinement, and he suffered muscle pain as a result, survives initial review. Defendant states that he requested recreation time on several occasions from defendants Craft, Evans, Nennger, Winkler, Owens, Choka, and Upfink, and was denied. The Court will issue process on these defendants.

Plaintiff alleges that the drinking water the jail is contaminated with bacteria and excessive amounts of lead. He states that he has gotten sick from drinking the water. Access to a sufficient quality and quantity of drinking water is a minimal life necessity. *See, e.g., Spires v. Paul*, 581 Fed. App'x 786, 792-94 (11th Cir. 2014) (forcing an inmate to drink from the toilet in a cell without potable water stated an Eighth Amendment violation). Liberally construed, the Court finds that plaintiff has stated a plausible claim that access to only contaminated drinking water, which has caused him to become ill, deprives him the minimal civilized measure of life's necessities. Again, plaintiff states defendants Winkler, Evans, Upfink, Owens, Nennger, and Choka were aware of this alleged constitutional violation, and the Court will issue process on them.

Plaintiff has also stated plausible claims of excessive use of force arising out of the incidents on February 17 and March 20, 2018. The Supreme Court has stated that "the Due

Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment." *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989). Under this standard, plaintiff's allegations concerning the use of tasers and shock shields by defendants Winkler, Choka, and Evans at a time when plaintiff was not resisting or being combatant states a plausible claim that defendants punished plaintiff in violation of plaintiff's constitutional rights. The Court finds plaintiff's claims of excessive force against defendants Winkler, Choka, and Evans survive initial review.

Finally, plaintiff's allegations of lack of medical care, including mental health care, survive initial review. Plaintiff states that the Perry County Jail contracts with Advanced Correctional Healthcare, Inc. to provide medical services, but these services apparently do not include mental health services. Plaintiff states that the Perry County Jail has no policy in place for the protection of inmates classified as suicide risks. Plaintiff entered Perry County Jail with PTSD, and notified staff that he would need to see a psychologist. He was never seen by a psychologist, and attempted suicide on "several occasions." Plaintiff states that defendants Winkler, Craft, Evans, Upfink, Owens, Nennger, and Choka were aware plaintiff was a suicide risk and had attempted suicide at the jail, however, they did nothing to stop him from attempting to commit suicide. *See, e.g., Liebe v. Norton*, 157 F.3d 574, 577 (8th Cir. 1998) ("[O]nce one is classified as a suicide risk, the right to be protected from that risk would seem to fall under the ambit of the right to have medical needs addressed."); *Bell v. Stigers*, 937 F.2d 1340, 1343 (8th Cir. 1991) (inmate suicides analyzed as the jailer's failure to provide appropriate medical care). The Court will order process to issue on defendants Winkler, Craft, Evans, Upfink, Owens, Nennger, Choka, and Advanced Correctional Healthcare, Inc. on plaintiff's claims that the Perry County Jail lacked medical care, lacked mental health treatment, and lacked a suicide prevention policy.

(B) <u>Legally Frivolous Claims</u>

Plaintiff's claims regarding the laundry service, lack of cleaning supplies, the booking process, lack of hygiene items, and vermin infestation are legally frivolous. *See Hudson v. McMillian*, 112 S. Ct. 995, 999-1000 (1992) (to establish objective component of conditions-of-confinement claim, deprivation must be "extreme" and must deny "minimal civilized measure of life's necessities."); *Wilson v. Seiter*, 111 S. Ct. 2321, 2326 (1991); *Seltzer-Bey v. Delo*, 66 F.3d 961, 963-64 (8th Cir. 1995) (for conditions of confinement to violate Eighth Amendment, inmate must show alleged deprivations denied him minimal civilized measure of life's necessities and defendants were deliberately indifferent to excessive risk to his health or safety). Plaintiff has not alleged any danger to his health, any injury, or any sickness arising out of these alleged conditions. As stated, the Court does not find any of these allegations sufficiently extreme to be considered a denial of the minimal civilized measure of life's necessities, and will dismiss these claims.

Plaintiff's allegations regarding strip searches are also legally frivolous, and will be dismissed. Minor isolated incidents of touching coupled with occasional offensive sexual remarks do not rise to the level of an Eighth Amendment violation. *See, e.g., Berryhill v. Schriro*, 137 F.3d 1073, 1075 (8th Cir.1998) (finding that conduct of prison employees in briefly touching inmate's buttocks, unaccompanied by any sexual comments or banter, was not sexual assault required to support an Eighth Amendment claim). The Court cannot find the allegations regarding plaintiff's strip search rise to the level of a constitutional violation, and will dismiss these allegations.

(C) <u>Liability of Perry County</u>

Under § 1983, "a municipality may only be held liable for constitutional violations which result from a policy or custom of the municipality." *Yellow Horse v. Pennington Cty.*, 225 F.3d

923, 928 (8th Cir. 2000). Plaintiff has alleged that Perry County has no policy in place for handling suicide risks, mental health screening and treatment, or sick calls at the Perry County Jail. "If medical is needed, it takes 30 days or more to receive any sort of care, regardless of emergency." Plaintiff states he "is aware of inmates who have died, because they couldn't [receive] medical care or mental health treatment." For purposes of initial review, the Court will allow plaintiff's claims against Perry County. *See, e.g., Hawkins v. County of Lincoln*, 785 F. Supp. 2d 781, 788-790 (8th Cir. 2011) (finding an issue of fact as to whether Lincoln County failed to have a specific policy for determining when an inmate can be removed from suicide watch and placed in a situation that may increase the likelihood of suicide attempt). It is plausible that Perry County's alleged lack of a policy for suicide prevention, mental health treatment, and sick calls at the Perry County Jail caused plaintiff's alleged constitutional violations.

(D) Liability of the Sheriff of Perry County, Mayor of Perryville, and City of Perryville, Missouri

A municipality "may not be found liable unless action pursuant to official municipal policy of some nature caused a constitutional tort." *Szabla v. City of Brooklyn Park, Minn.*, 486 F.3d 385, 389 (8th Cir. 2007) (en banc) (quoting *Monell v. Dep't of Social Servs.*, 436 U.S. 658, 691 (1978)). Other than stating conclusory allegations regarding the City of Perryville and the Mayor of Perryville, plaintiff has not alleged how the city and its unnamed mayor are liable for alleged constitutional violations at the Perry County Jail. Additionally, plaintiff has stated no official municipal policy of the City of Perryville that caused his alleged constitutional violations.

Finally, plaintiff's allegations against Sheriff Gary Schaaf sound in respondeat superior. Plaintiff does not allege that Schaaf was causally linked to, or that he bore any personal responsibility for, plaintiff's alleged denial of medical care and the allegedly unconstitutional

conditions of confinement at the Perry County Jail. "Liability under § 1983 requires a causal link to, and direct responsibility for, the alleged deprivation of rights." *Madewell v. Roberts*, 909 F.2d 1203, 1208 (8th Cir. 1990). Plaintiff's claims against Sheriff Schaaf sound in respondeat superior and are not cognizable under § 1983. *See Boyd v. Knox*, 47 F.3d 966, 968 (8th Cir. 1995).

(E) Defendants Unknown Correctional Officers, Unknown Captains, Unknown Lieutenants, and Unknown Food Service Supervisor

Plaintiff lists several "unknown" individuals as defendants: unknown correctional officers, unknown captains, unknown lieutenants, and an unknown food service supervisor. He makes no specific allegations against any unknown individual. Rather, he uses the term "unknown" to create a catch-all category of individuals who he might later include in his suit. Because he makes no specific allegations against any specific unnamed individual, these defendants will be dismissed without prejudice. If discovery reveals additional jail personnel who violated plaintiff's constitutional rights, plaintiff can move to amend his complaint to add specific jail personnel.

Accordingly,

**IT IS HEREBY ORDERED** that plaintiff's motion to proceed in forma pauperis [ECF No. 2] is **GRANTED**. Pursuant to 28 U.S.C. § 1915(b)(4), the initial partial filing fee is waived.

**IT IS FURTHER ORDERED** that the institution having custody of plaintiff shall, whenever the amount in plaintiff's prison account exceeds $10.00, send monthly payments that equal 20 percent of the funds credited to the account the preceding month to the United States District Court for the Eastern District of Missouri Clerk's office, pursuant to 28 U.S.C. § 1915(b)(2), until the filing fee of $350 is paid in full.

**IT IS FURTHER ORDERED** that the Clerk shall issue process or cause process to issue upon the complaint on defendants Wayne Craft, Kara Evans, Josh Upfink, Sara Owens,

Kristin Nennger, Sabrina Winkler, Jeremiah Choka, Aramark Food Services, Inc., Advanced Correctional Healthcare, Inc., and Perry County, Missouri.

**IT IS FURTHER ORDERED** that plaintiff's claims against Gary Schaaf, the City of Perryville, Missouri, the Mayor of Perryville, Missouri, Unknown Correctional Officers, Unknown Captains, Unknown Lieutenants, and Unknown Food Service Supervisor are **DISMISSED**.

**IT IS FURTHER ORDERED** that the following conditions of confinement claims set out by plaintiff in his complaint are dismissed on initial review under 28 U.S.C. § 1915(e):

- (1) the booking process (Compl., § III.B.);
- (2) no laundry service (*id.* at § III.D);
- (3) no cleaning supplies (*id.* at § III.E);
- (4) denial of hygiene products (*id.* at § III.H); and
- (5) vermin infestation (*id.* at § III.I).

An Order of Partial Dismissal will accompany this Memorandum and Order.

Dated this 27th day of December 2018.

JOHN A. ROSS
UNITED STATES DISTRICT JUDGE